# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**CASE NUMBER:  3:24cr101/TKW**

**v.**

**GREMEX SHIPPING S.A. de C.V.**

_____ /

## PLEA AGREEMENT

### 1. PARTIES TO AGREEMENT

This agreement is entered into, by, and between, GREMEX SHIPPING S.A. de C.V. as the Defendant, George K. Kontakis, as attorney for the Defendant, the United States Attorney for the Northern District of Florida, and the United States Department of Justice, Environmental Crimes Section. This agreement specifically excludes and does not bind any other state or federal agency, including other United States Attorneys and the Internal Revenue Service, from asserting any civil, criminal, or administrative claim against the Defendant.

Defendant represents that it is authorized to enter into this Plea Agreement and to bind itself and its subsidiaries. At the time of signing this Agreement, Defendant shall provide to the United States a sworn statement in the form of legal documents certifying that Defendant is authorized to enter

FILED IN OPEN COURT
10 / 30 / 2024  RC
CLERK, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA

into and comply with all of the provisions of this Plea Agreement. The resolutions further shall certify that the Defendant's Board of Directors have authorized these actions, and that all corporate formalities for such authorizations have been observed. The Defendant also agrees to file with the Court written approval by the Defendant manifesting its intention and agreement to be bound by such corporate authorization, that counsel for the Defendant, George Kontakis and/or his associate, is a duly authorized corporate representative, and that he will appear at the plea and sentencing hearings on behalf of the Defendant. This written authorization for the Defendant shall be attached hereto as Attachment A.

## 2. TERMS OF THE AGREEMENT

The parties agree to the following terms:

a.      The Defendant will plead guilty to Count One of the Information. Count One charges the Defendant with failure to maintain an accurate Oil Record Book, in violation of the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908(a), and implementing regulations set forth at 33 C.F.R. §§ 151.09(a)(5) and 151.25(d)(4).  The Defendant faces a maximum fine of either $500,000.00, or twice the gross gain or loss resulting from the unlawful conduct, pursuant to 18 U.S.C. § 3571(c) and (d); a term of probation

of five years, pursuant to 18 U.S.C. § 3561(c)(1); and a special assessment of $400.00, pursuant to 18 U.S.C. § 3013(a)(2)(B). Defendant agrees to pay the special monetary assessment on or before the date of sentencing.

b.    The maximum sentence to which the Defendant is subject includes restitution to victims, as permitted or required under 18 U.S.C. §§ 3663 and 3663A. The United States and the Defendant agree that an order of restitution is not appropriate in this case.

c.    By voluntarily pleading guilty to the charges in the Information, the Defendant, as to the count pled herein, knowingly waives and gives up constitutional rights which attend a Defendant on trial in a criminal case. These constitutional rights include: the right to plead not guilty; the right to have a jury or judge determine guilt on the evidence presented; the right to compel the government to prove guilt beyond a reasonable doubt; the right to confront and cross-examine witnesses; the right to testify; the right to present evidence; and the right to compel the attendance of witnesses.

d.    The Defendant is pleading guilty because the Defendant is in fact guilty of the charge alleged in Count One of the Information. In pleading guilty, the Defendant acknowledges that were this case to go to trial, the

government would present evidence to support the charge beyond a reasonable doubt.

e.    Upon the District Court's adjudication of guilt of the Defendant for the charged crime, the United States will not file any further criminal charges against the Defendant arising out of the same transactions or occurrences to which the Defendant has pled. The United States Attorney's Office for the Northern District of Florida and the Environmental Crimes Section of the United States Department of Justice, agree to forgo criminal prosecution against Defendant for any additional environmental offenses or related offenses, including but not limited to, falsification of oil record books, violations of APPS, false statements, or obstruction of justice, occurring before the date of this Plea Agreement which are known to the United States at the time of signing this Plea Agreement.   The Defendant agrees that substantial evidence exists to support the charge in the Information.

f.    Nothing in this agreement shall protect the Defendant in any way from prosecution for any offense committed after the date of this agreement.

g.    The parties reserve the right to advise the District Court and other authorities of their versions of the circumstances surrounding the offenses committed by the Defendant. The United States further reserves the right to

correct any misstatements by the Defendant or Defendant's attorneys and to present evidence and make arguments pertaining to the application of the sentencing guidelines and the considerations set forth in 18 U.S.C. § 3553(a), including sentencing recommendations, and whether departure upward or downward is appropriate.

### 3. SENTENCING

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States and the Defendant recommend to the Court that the appropriate sentence shall include the following components. If the sentencing judge rejects this Plea Agreement, then it shall be null and void at the option of either the government or Defendant.

(a) **Fine:** Defendant agrees to pay a fine of $1,750,000.00. The Defendant shall make payment of the fine pursuant to the following schedule: $437,500.00 on the day of sentencing; a second payment of $437,500.00 no later than twelve months after the date of sentencing; a third payment of $437,500.00 no later than twenty-four months after the date of sentencing; and a fourth payment of $437,500.00 no later than thirty-six months after the date of sentencing. Any portion of the criminal fine unpaid on the day of sentencing shall accrue interest at the rate specified in 18 U.S.C. § 3612(f)(2).

To ensure payment of the fine and other obligations in this agreement, the government will retain the $2,500,000.00 bond ("Surety Bond") previously posted by Defendant pursuant to the Agreement on Security, dated September 21, 2023, until such time as the first installment payment is made and a replacement bond in the name of Defendant in the amount of $1,312,500.00 is tendered, at which time the Surety Bond shall be returned to Defendant and cancelled. Defendant's posting of the replacement bond is for security for any unpaid fines, and, as such, each time an installment payment is made, the bond amount may be reduced accordingly.

(b) **Mandatory Special Assessment:** Defendant shall pay a special assessment for each count of conviction for a total special assessment amount of $400.00. The special assessment is due on the date of sentencing.

(c) **Probation:** The Defendant shall be placed on organizational probation for a period of four years from the date of sentencing pursuant to 18 U.S.C. § 3561(c)(1) and U.S.S.G. §§ 8D1.1 and 8D1.2. The terms of probation shall be as follows:

(1) No further violations. Defendant shall commit no further violations of the International Convention for Prevention of Pollution from Ships ("MARPOL"), APPS, or any other federal, state, or local law, including

6

those laws and regulations for which primary enforcement has been delegated to the state authorities, and shall conduct all operations in accordance with the environmental laws of the United States.

(2) <u>Payments.</u> Defendant shall make full and timely payments as to all monies owed, including all special assessments, fines, and restitution (if any), and community service, in accordance with the payment scheduled described above.

(3) <u>Environmental Compliance Plan.</u> Defendant agrees to fund and implement the Environmental Compliance Plan ("ECP") attached hereto as Attachment B, during its term of probation. This ECP shall apply to all vessels operated by Defendant that call, or may call, upon any port or terminal in the United States.

(d) **Additional Provisions:** This agreement shall bind Defendant and all related entities, subsidiaries, and successors-in-interest, if applicable. Defendant shall provide the government with immediate notice of the following: any corporate name changes; any purchase or sale of vessels; any purchase, sale or reorganization of its company; or any other change impacting upon or affecting this agreement. No change in name, change in corporate or individual control, business reorganization, change in ownership,

merger, change of legal status, sale or purchase of assets, or similar action shall alter the responsibilities of the Defendant under this agreement. Defendant understands and agrees that it shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

The parties have entered into this Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure with the understanding that the Court will accept or reject the agreement but may not modify its terms. If the District Court modifies any portion of the Plea Agreement, the parties have a right to withdraw the guilty plea.

Except as otherwise provided in this paragraph, the Defendant hereby expressly waives the right to appeal this sentence on any ground, including, but not limited to, any appeal right conferred by 18 U.S.C. § 3742 on the Defendant, and the Defendant further agrees not to contest this sentence in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255, except that Defendant shall retain the right to bring a claim of ineffective assistance of counsel. The Defendant reserves the right to appeal any sentence imposed that does not comply with the above stipulated sentence.

The Defendant further waives any right to seek attorney's fees or other litigation expense under the "Hyde Amendment," 18 U.S.C. § 3006A, and the Defendant acknowledges that the government's position in the instant prosecution was not vexations, frivolous, or in bad faith.

The Defendant understands that any discussions with the Defendant's attorney or anyone else regarding sentencing guidelines are merely rough estimates and the Court is not bound by those discussions. The Defendant understands that the sentencing guidelines are advisory and not mandatory for sentencing purposes. Defendant understands and acknowledges that the United States Sentencing Guidelines, including Chapter Eight, that provide guidance for the sentencing of corporate defendants, must be considered by the Court, except that, pursuant to U.S.S.G. §§ 8C2.1 and 8C2.10, the United States Sentencing Guidelines which pertain to the sentencing of organizations do not determine the fine range in cases involving environmental crimes, including the making of false statements, the use of false writings, or efforts to obstruct justice in order to conceal environmental crimes.

The defendant waives its right to a pre-sentence investigation report pursuant to Rule 32(c)(1)(A)(ii) of the Federal Rules of Criminal Procedure, and the parties request that the Court impose immediate sentence pursuant to

9

the terms of this Plea Agreement at the time of its arraignment on the Information and entry of plea.

## 4. FACTUAL BASIS

The Defendant admits the facts set forth in the Statement of Facts, and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. The Statement of Facts, which is hereby incorporated into this Plea Agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(a) of the Sentencing Guidelines.

## 5. CONCLUSION

In every case in the Northern District of Florida in which the parties enter a Plea Agreement, the Court requires the parties to enter a sealed Supplement to Plea Agreement indicating whether or not the defendant agrees

10

to cooperate with the government. The parties agree to the Supplement to Plea

Agreement entered in this case.

JASON R. COODY
United States Attorney

GEORGE K. KONTAKIS
K&L Gates, LLP
Attorney for the Defendant

JOEL LA BISSONNIERE
Trial Attorney
Environmental Crimes Section
150 M. Street, NE, Suite 4-115
Washington, DC 20002
District of Columbia Bar: 494053
Joel.Labissonniere@usdoj.gov

_10/17/24_
Date

J. RYAN LOVE
Assistant United States Attorney
Northern District of Florida
21 East Garden Street, Suite 400
Pensacola, FL 32502-5675
Florida Bar: 0637920
Ryan.Love@usdoj.gov

_10/23/24_
Date

11

ATTACHMENT A

Minutes of a Meeting of the Board of Directors of
Gremex Shipping S.A. de C.V., a Mexican Corporation
Meeting held on the 24th day of October 2024.

**Present:**

| Mr. | C. Athanasios Papailias Blaxoy | - | President and Director General |
| Ms. | Laura Alejandra Vela Aragón | - | Secretary and Director |

Mr. C. Athanasios Papailias Blaxoy, President and Director General of Gremex Shipping S.A. de C.V. (hereinafter "the Corporation") took the chair and acted as Chairman and called the Meeting to order. Ms. Laura Alejandra Vela Aragón acted as Secretary of the Corporation and recorded these minutes. The Chairman declared that Notice of the Meeting had been duly waived and that all directors were present in person or by proxy and that the Meeting was duly constituted.

On motion duly made, seconded and unanimously carried;

**IT WAS RESOLVED:**

THAT, the terms and conditions of the written Plea Agreement, dated 17th of October 2024 between the United States of America and the Corporation, having been explained to the Board by its counsel, and the Board understanding those terms and conditions, and all corporate formalities required for the authorizations contained herein having been observed, the Corporation hereby assents to those terms and conditions and agrees to enter into the said written Plea Agreement in that certain matter now pending in the United States District Court, Northern District of Florida, entitled <u>United States of America, Plaintiff, v. Gremex Shipping S.A. de C.V., Defendant</u>, Case No. 3:24-cr-00101-TKW. A copy of the written Plea Agreement is attached hereto and the Board of Directors deems it in the best interests of the Corporation to enter into that Agreement; and,

THAT, Mr. C. Athanasios Papailias Blaxoy, Director General and Authorized Representative of the Corporation, and/or Mr. Lazaro R. Tula Gonzalez, Authorized Representative of the

1

Corporation, and/or Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Jaime Betbeze of Maynard Nexsen PC, each be and hereby is authorized, empowered and directed to execute the Plea Agreement on behalf of the Corporation and to execute any and all other documents and instruments, and to take any and all actions to do any and all other things necessary or incidental for the execution and entry of the Plea Agreement; and,

THAT, Mr. C. Athanasios Papailias Blaxoy, Director General and Authorized Representative of the Corporation, and/or Mr. Lazaro R. Tula Gonzalez, Authorized Representative of the Corporation, and/or Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Jaime Betbeze of Maynard Nexsen PC, be and hereby are authorized to appear before the United States District Court, Northern District of Florida, and enter a plea of guilty on behalf of the Corporation in accordance with the terms of the Plea Agreement in the case entitled <u>United States of America, Plaintiff, v. Gremex Shipping S.A. de C.V., Defendant</u>, Case No. 3:24-cr-00101-TKW; and,

THAT, the Board, having been advised by counsel that the charge to which the Corporation will plead guilty pursuant to the written Plea Agreement in the case entitled <u>United States of America, Plaintiff, v. Gremex Shipping S.A. de C.V., Defendant</u>, Case No. 3:24-cr-00101-TKW, is presented by Information rather than by grand jury indictment, and the Board having been advised of the Corporation's right to be charged by grand jury indictment and fully understanding that right, the Corporation hereby authorizes, directs and empowers Mr. C. Athanasios Papailias Blaxoy, Director General and Authorized Representative of the Corporation, and/or Mr. Lazaro R. Tula Gonzalez, Authorized Representative of the Corporation, and/or Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Mr. Jaime

2

Betbeze of Maynard Nexsen PC, to appear before the United States District Court, Northern District of Florida, and, in that case, waive the Corporation's right to be charged by grand jury indictment and consent to being charged by Information.

**AND IT WAS FURTHER RESOLVED:**

THAT, the Corporation, acknowledges that, with the consent of its Board of Directors, it is, and has been, represented in this matter by its counsel, Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Mr. Jaime Betbeze of Maynard Nexsen PC; and,

THAT, the Corporation, by its Board of Directors, acknowledges that it has been fully informed and counseled by its attorneys in respect to the Plea Agreement and the possible fines, penalties and consequences thereof, and the Corporation understands the provisions of the Plea Agreement, their contents and consequences.

**AND IT WAS FURTHER RESOLVED:**

THAT, the terms and conditions of the written Environmental Compliance Program dated the 17th day of October 2024 between the Corporation and the United States of America having been read and understood by the Board, the Corporation hereby assents to those terms and conditions and agrees to enter into the said written Environmental Compliance Program, as set forth in the Plea Agreement, in that certain matter pending in the United States District Court, Northern District of Florida, entitled <u>United States of America, Plaintiff, v. Gremex Shipping S.A. de C.V., Defendant</u>, Case No. 3:24-cr-00101-TKW;and,

THAT, the Board of Directors deem it in the best interests of the Corporation to enter into that Plea Agreement and the Environmental Compliance Program; and,

3

THAT, Mr. C. Athanasios Papailias Blaxoy, Director General and Authorized Representative of the Corporation, and/or Mr. Lazaro R. Tula Gonzalez, Authorized Representative of the Corporation, and/or Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Mr. Jaime Betbeze of Maynard Nexsen PC, be and hereby are authorized, empowered and directed to execute the Environmental Compliance Program on behalf of the Corporation, thereby signifying its assent to the terms and conditions of the Environmental Compliance Program; and,

THAT, Mr. C. Athanasios Papailias Blaxoy, Director General and Authorized Representative of the Corporation, and/or Mr. Lazaro R. Tula Gonzalez, Authorized Representative of the Corporation, and/or Mr. George K. Kontakis of K&L Gates, LLP, and/or Ms. Jody M. Schisel-Meslin of K&L Gates, LLP, and/or Mr. Jaime Betbeze of Maynard Nexsen PC, be and hereby are authorized, to appear before the Court at the time of sentencing, to allocute on behalf of the Corporation, and to do any and all things necessary to plead to the charge against the Corporation and to accept the sentence imposed by the Court on behalf of the Corporation, and to deliver payment of any and all fines, payments and special assessments, as required.

Executed this 24th day of October 2024.

President and Director General
Mr. C. Athanasios Papailias Blaxoy

Secretary and Director
Laura Alejandra Vela Aragón

4

**ATTACHMENT B**

**Environmental Compliance Plan**
**United States v. Gremex Shipping S.A. de C.V.**

The following standards and requirements for an ENVIRONMENTAL
COMPLIANCE PLAN ("ECP") have been prepared pursuant to the Plea
Agreement between GREMEX SHIPPING S.A. de C.V. ("GREMEX") and the
United States ("Government") filed in the United States District Court for the
Northern District of Florida. Compliance with all of the standards and
requirements of the ECP is an essential term of the Plea Agreement.

The ECP includes various provisions to ensure that all vessels owned, operated,
and/or technically managed by GREMEX that call on ports of the United States
comply with all applicable maritime environmental requirements established under
applicable international, flag state and port state law, including, but not limited to
the International Convention for the Safety of Life at Sea ("SOLAS"), the
International Safety Management ("ISM") Code, the International Convention for
Prevention of Pollution from Ships ("MARPOL"), and all applicable Federal and
state statutes and regulations including, but not limited to, the Ports and Waterways
Safety Act ("PWSA"), the Act to Prevent Pollution from Ships ("APPS"), the Clean
Water Act ("CWA"), and the Oil Pollution Act of 1990 (OPA 90), and with the
requirements of the Plea Agreement. The auditing requirements of this ECP apply
to all vessels that are owned, operated, and/or technically managed, by GREMEX
that call at U.S. ports. As more fully set forth below, this ECP and its requirements
will also apply to vessels that GREMEX acquires or assumes management of during
the period of probation and that will call at United States ports during the term of
probation.

The Covered Vessel(s) as of the date of signing of this ECP are:

    1.  GRIT CEMENT IV,  IMO No. 9331830.

**A. APPLICABILITY/PURPOSE.**

1. This ECP shall cover and apply to all GREMEX operations involving all
   seagoing vessels that: (a) are owned (wholly or in part), operated and/or
   technically managed by GREMEX; and (b) will call at United States ports
   (hereafter referred to as the "Covered Vessel(s)").

1

2. The ECP is not intended to replace the ISM Code, any other applicable international legal requirement, or United States statute or regulation. The purpose of this ECP is to augment the requirements of existing law by: increasing and improving inspections, reviews, and audits of Covered Vessels; increasing training of all GREMEX personnel involved with said vessels; developing and implementing management and engineering controls to better manage, detect and prevent environmental violations; and requiring periodic reports to the United States Probation Office for the Northern District of Florida, the United States Attorney's Office for the Northern District of Florida, the Environmental Crimes Section of the United States Department of Justice, and the United States Coast Guard ("United States"). The ultimate purpose is to ensure that GREMEX is following the requirements of this ECP; all Covered Vessels comply with all applicable maritime environmental requirements established under applicable international, flag state, and port state law and all applicable Federal and state statutes and regulations; and an effective environmental management system is established and implemented by GREMEX to prevent recurrence of violations.

## B. COMPLIANCE MANAGER.

1. Within sixty (60) days of entry of the Plea Agreement, GREMEX shall designate a Compliance Manager ("CM") who shall report directly to the General Manager ("GM"), or equivalent, of GREMEX. Once designated, GREMEX will promptly notify the United States of CM's name and contact information.

2. The CM position will be filled by an individual with significant maritime vessel operational background, who possesses auditing experience, who is thoroughly familiar with the requirements of this ECP, and who is knowledgeable about domestic and international maritime environmental laws and regulations.

3. The CM shall generally be responsible for: coordinating with the Third Party Auditor ("TPA"); developing and implementing all of the procedures and systems required under the ECP; establishing and implementing training programs; ensuring that reviews, audits and surveys are carried out as required; ensuring that all documents are properly maintained; and ensuring that reports required under the ECP are made on a timely basis to the Court Appointed Monitor ("CAM") and the United States. All required reports shall be reviewed by the CM and signed under the penalty of perjury.

4. Specific CM responsibilities include the following:

2

a. The CM will be responsible for developing training programs to educate and train GREMEX employees on their environmental commitment, the requirements of the ECP, the policies and procedures for complying with the ECP, and the possible consequences to GREMEX and to individuals for failure to comply with environmental laws.

b. The CM shall also provide environmental consultants and contractors of GREMEX involved in the operation of Covered Vessels with documents and training to make them aware of this ECP and its requirements.

c. The CM shall verify that the TPA conducts the review and audits required by the ECP and that the required reports are prepared. The CM shall ensure that reports are made on a timely basis to the U.S. Probation Office, CAM, the designated representative of the Coast Guard, and GREMEX.

d. The CM shall supervise annual overall reviews of the ECP and "focused" reviews of key environmental areas to promote the adoption of "best practices."

e. The CM shall establish a means by which persons may report (anonymously if so desired) issues of non-compliance with this ECP and any other procedure, policy, or regulation associated with environmental protection. The CM shall timely review, investigate, and document reports of non-compliance received, and shall initiate, monitor, and document all actions taken as a result of such reports. The CM shall maintain records of such reports and action taken and shall make them available for review by the TPA and the CAM.

5. To assist the CM in carrying out the above responsibilities:

a. The CM shall be authorized to implement all requirements of the ECP on the Covered Vessels.

b. GREMEX shall establish policies that require and enable all persons working for GREMEX, its subsidiaries or affiliated business entities (owned wholly or partially by GREMEX) as crew, employees, independent contractors or agents (both vessel and shore side) to notify the CM of all violations of any applicable environmental requirements or other requirements of this ECP. GREMEX shall also establish policies that make failure to report violations to the CM grounds for dismissal. GREMEX

agrees not to retaliate against any person who reports violations to the CM.

   c. The CM shall be authorized to access all records and personnel regarding the Covered Vessels for the purpose of ensuring compliance with the ECP.

## C. MASTER AND CHIEF ENGINEER.

1. The Master of each Covered Vessel subject to this ECP shall ensure that prompt reports are made to the CM of any non-compliant condition associated with marine environmental protection requirements of the Covered Vessel.

2. The Chief Engineer onboard each Covered Vessel shall perform the following duties regarding this ECP:

   a. Daily measure, monitor, record and manage shipboard generated wastes generated by engineering operations; and

   b. Report to the CM and cooperate with GREMEX to resolve environmental concerns, such as inoperative or ineffective pollution prevention equipment and document all efforts to do so in a log that is available for review and audit.

## D. THIRD PARTY AUDITOR.

1. GREMEX shall hire and fund a Third-Party Auditor ("TPA"), who shall periodically conduct audits and submit the reports as more fully described in this ECP.

2. Selection of the TPA shall be consistent with the following:

   a. Within sixty (60) days of sentencing, GREMEX shall submit to the Government a list of three (3) qualified candidates for the TPA position along with its recommendation for approval of one of the candidates, from which the Government will select a candidate to serve as the TPA. The Government reserves the right to reject any proposed TPA. In the event that none of the candidates is found acceptable, or if the work of the TPA is unsatisfactory at any time, the Government may request that GREMEX supply additional candidates

4

b. To the extent practicable, GREMEX will identify candidates who have not provided auditing services to GREMEX within the last calendar year prior to the U.S. Coast Guard boarding of the M/V SUHAR or is not associated with the Classification Societies or Flag Administrations to which the Covered Vessels are classed or registered.

c. Qualified candidates for the TPA include individuals or firms that:

   i. Are certified by the American National Standards Institute Registration Accreditation Board or have compatible credentials and experience in performing EMS/ECP audits;

   ii. Have staff capable of applying the most current International Standards Organization ("ISO") 14000 environmental management auditing criteria and have the following experience, expertise, and capabilities:

      1. Expertise and competence in the regulatory programs under United States and other Marine Environmental Protection Requirements;

      2. Experience in performing environmental audits in industrial or maritime environments, and;

      3. Sufficient expertise and competence to assess whether GREMEX has adequate policies, procedures, and equipment in place to ensure compliance with this ECP and to ensure regulatory compliance, correct non-compliance, and prevent future non-compliance.

3. The TPA must have adequate staff to perform the work required of this ECP. Due to the in-depth nature of the audit criteria, persons with specialized knowledge and experience will be required to perform the audits. The knowledge, skills and abilities of the TPA and staff must align with the criteria of the audits. Experienced personnel with extensive operational, maintenance and repair of shipboard and machinery space systems, equipment, and components is a prerequisite. The TPA shall employ at least one senior level Marine Engineer (Chief, First or Second Engineer) to perform shipboard machinery space audits. The TPA shall provide the Government with the resumes of the TPA's auditors assigned to conduct shore-side and vessel

5

audits.

4. Contractual Independence. During the term of probation, the TPA: shall not directly own any stock in GREMEX; must have no other ongoing contractual or business relationship, other than that of the TPA, with GREMEX; and may not seek or serve in other capacities with GREMEX, unless first disclosed to the Government, the Court, and the CAM, and expressly approved by the Government. The TPA must exercise independent judgment and ensure that the objectives set forth in this ECP are met. GREMEX and the TPA shall notify the Government if any contractual relationships or proposed contractual relationships between GREMEX and the TPA arise during the term of probation.

5. Functional Independence. The TPA shall function independently of GREMEX but may communicate with GREMEX about the substance of its work. At its discretion, the TPA, may share with GREMEX its audit checklist. The TPA may consult with but shall not receive or request approval of any form from any employee of GREMEX regarding the development, clearance, or evaluation of any document, report, or communication of any kind, whether draft or final, required by this ECP.

6. All work performed by the TPA and its auditors must be certified as being accurate and truthful. The certification shall be made with the understanding that any false information knowingly submitted is subject to prosecution under 18 U.S.C. §1001.

## E. ENVIRONMENTAL MANAGEMENT SYSTEM.

1. The CM shall be responsible for establishing an Environmental Management System ("EMS"). To the extent possible, the EMS shall be based upon the ISO 14001/2015 standards and shall be part of GREMEX's documented management system.

2. The EMS shall include the following components:

   a. Environmental Policy: The EMS should be based upon a documented and clearly communicated environmental policy. This policy should set out GREMEX's commitment towards a cleaner marine environment. It should include:

    i. Provisions for compliance with all relevant environmental requirements;

    ii. A commitment to continuous improvement in environmental performance, including those areas required by this ECP;

    iii. A commitment to pollution prevention that emphasizes source reduction, to include funding and human resources necessary to effectively maintain and repair the systems, equipment and components found in machinery and cargo spaces of vessels;

    iv. A commitment to continuous reduction of environmental risks; and

    v. A commitment to sharing information with external stakeholders on environmental performance.

b. Communication of Environmental Requirements: The EMS must provide a means to identify, explain, and communicate all environmental requirements, and any additional best practices or industry norms which GREMEX may choose to adopt, to GREMEX employees, vendors, technicians, or non-crewmembers who are boarding and/or sailing with the Covered Vessels.

c. Objectives and Targets:

    i. The EMS shall establish specific objectives and targets for:

        1. Achieving and maintaining compliance with all applicable marine environmental protection requirements and the requirements of this ECP;

        2. Environmental performance demonstrating continuous improvement in regulated and non-regulated areas;

        3. Pollution prevention that emphasizes source reduction with respect to machinery space waste streams and effective management of cargo related wastes; and

        4. Sharing information with external stakeholders on

7

environmental performance against all EMS objectives and targets, upon request.

   ii. The EMS shall establish appropriate time frames to meet these objectives and targets. These must be documented and updated as environmental requirements change or as modifications occur in activities and structures within organizations in a manner that affects environmental performance or as a result of recommendations made by the TPA.

d. Structure, Responsibility and Resources: GREMEX will ensure that it is equipped with sufficient personnel and resources to meet its objectives and targets. The EMS will describe in detail the procedures and steps for achieving those objectives and targets. The EMS will define the compliance roles and responsibilities of all crew and shore side personnel involved with the operation, maintenance and repair of Covered Vessels, and will indicate how they and other corporate personnel will be held accountable for achieving and maintaining compliance with this EMS and other applicable marine environmental protection requirements. The EMS will also establish procedures for receiving and addressing concerns raised by GREMEX employees and others regarding environmental performance and compliance.

e. Operational Control: The EMS will identify and provide for the planning and management of all of GREMEX operations and activities with a view to achieving the ECP objectives and targets.

f. Corrective and Preventive Action and Emergency Procedures: The EMS shall establish documented procedures for:

   i. Preventing, detecting, investigating, promptly initiating corrective action, and reporting any occurrence that may affect the organization's ability to meet compliance with environmental requirements or achieve ECP objectives and targets.

   ii. Mitigating any adverse impacts on the environment that may be associated with accidents or emergency situations. If the environmental violation or incident resulted from a weakness in the system, the EMS should be updated and refined to minimize the likelihood of such problems recurring in the future. The EMS should

also, to the extent possible, provide for the testing and evaluation of emergency procedures.

g. Training, Awareness and Competence: The EMS must establish procedures to ensure that all persons boarding and/or sailing a Covered Vessel and whose responsibilities affect the ability to achieve the ECP objectives and targets, have been trained and are capable of carrying out these responsibilities. In particular, the training should highlight means to enhance the ability of such personnel to ensure compliance with environmental requirements and voluntary undertakings, the requirements of the ECP, and other marine environmental protection requirements.

h. Organizational Decision-making and Planning: The EMS must describe how adherence to the ECP will be integrated into the GREMEX overall decision-making and planning, in particular, decisions on capital improvements, training programs, and vessel operations, maintenance, and repair activities.

i. Document Control: The EMS must establish procedures to ensure maintenance of appropriate documentation relating to objectives and targets and should also ensure that those records will be adequate for subsequent evaluation and improvement of the operation of the EMS. Additionally, all records will be maintained and made available to the TPA and port and flag state personnel upon request.

j. Continuous Evaluation and Improvement:

i. The EMS must include methods to perform periodic, documented and objective internal auditing of the organization's performance in achieving these objectives and targets, and on how well the ECP assists the organization in achieving those objectives and targets. This requirement is independent from the auditing requirements detailed elsewhere in this plan. The goal of these internal audits and reviews will be to allow management to continuously monitor and assess Covered Vessel systems, equipment and components, and the ability and proficiency at which Covered Vessel crew members and personnel ashore comply with the policies and procedures established by this ECP.

ii. The EMS will identify an ongoing process for assessing when a

Covered Vessel is to be taken out of service for an environmental discharge related repair.

iii. The EMS will include organization charts, as appropriate, that identify shore side and vessel individuals having environmental performance, risk reduction, and regulatory compliance responsibilities. The charts shall also specify responsibilities of Marine and Technical Superintendents to report information related to environmental releases or inadequate performance of environmental pollution protection equipment, casualties causing internal spills, excessive waste development and leaking equipment with oil-to-sea interfaces.

iv. The EMS will promote non-retaliatory practices and ensure that employees are not punished or otherwise suffer negative consequences for reporting violations of environmental laws, regulations, or policies.

v. The EMS will describe potential consequences for departure from specified operating policies and procedures, including possible termination of employment, as well as criminal/civil/administrative penalties as a result of noncompliance.

vi. The EMS will make employee compliance with environmental policies of the ECP, and other applicable marine environmental protection requirements a positive factor, and failure to comply a negative factor, in all evaluations undertaken for the performance of all GREMEX employees.

vii. The EMS will include policies against any incentive or bonus programs based on minimizing operational costs associated with the operation, maintenance and repair of machinery space or cargo/deck space systems, equipment and components to ensure that employees do not avoid such costs and thereby sacrifice environmental compliance.

viii. The EMS will describe a confidential non-compliance reporting system that is adopted to ensure that employees may quickly and confidentially report discharges, spills, environmental incidents and other environmental performance data.

  ix. The EMS will identify all operations and activities where documented standard operating practices (SOPs) are needed to prevent an unreasonable threat of harm to the marine environment, including potential violations or unplanned waste stream releases, with a primary emphasis on vessel engine room operations, systems, equipment and components and cargo residue management.

  x. The EMS will identify the types of records developed and maintained in support of the ECP such as reports, audit working papers, correspondence, communications, reports from the confidential system for non-compliance reporting, and identify personnel responsible for their maintenance, and procedures for responding to inquiries and requests for release of information. The EMS shall provide a system for conducting and documenting routine, objective self-inspections by GREMEX internal auditors, supervisors, and trained staff to check for malfunctions, deterioration, and inadequate maintenance of pollution prevention equipment, worker adherence to SOPs, unusual situations, and unauthorized releases.

## F. COURT APPOINTED MONITOR.

1. As part of the ECP, GREMEX agrees to pay for a Court Appointed Monitor ("CAM") that will report to the Court and the United States during the period of probation.

2. Within sixty (60) days of sentencing, GREMEX will submit a list of three qualified candidates for the CAM from which the United States will select one of the candidates.

  a. Qualified candidates for the CAM position must have expertise and competence in the regulatory programs under U.S. and international environmental laws, and have expertise and competence in waste stream evaluation, monitoring and control technologies, with a primary emphasis on engine room and machinery space operations, used by GREMEX to achieve and maintain compliance in respect to GREMEX's Covered Vessels. The CAM shall also have sufficient expertise and competence to assess whether GREMEX has an adequate Environmental Management System in place to assess regulatory and ECP compliance, to correct non-

compliance, and to prevent future non-compliance.

b. The CAM must not directly own any stock in GREMEX, any of its subsidiaries, affiliated business entities (owned wholly or partially by GREMEX) or any agents of GREMEX and must have no other direct financial stake in the outcome of duties conducted pursuant to this Plea Agreement. The CAM must be capable of exercising the same independent judgment and discipline that a certified public accounting firm would be expected to exercise in auditing a publicly held corporation. If GREMEX has any other contractual relationship with the CAM, both GREMEX and the CAM shall disclose to the United States such past or existing contractual relationships.

c. If the United States determines that the proposed CAM does not reasonably meet the qualifications set forth in the previous paragraphs, or that past or existing relationships with the CAM would affect the CAM's ability to exercise the independent judgment and discipline required to conduct the ECP review and evaluation, such CAM shall be disapproved and another CAM shall be proposed by GREMEX within thirty (30) days of GREMEX's receipt of the United States' disapproval. If agreement cannot be reached regarding the selection, the decision shall be left up to the Court.

3. The CAM shall perform the following tasks and responsibilities and provide written submissions to the Court as set forth below:

a. Review the relationship between GREMEX and the TPA and evaluate the adequacy of measures taken to ensure that the TPA acts with independence.

b. Review annual audits prepared by the TPA and submit annual reports to the United States and GREMEX regarding each of the audits. The CAM's reports shall: address the adequacy of the audit; the adequacy of any proposed recommendations; and the ability of GREMEX to meet the objectives of the ECP and all applicable environmental requirements.

4. If the CAM receives information regarding a violation of any applicable existing marine environmental protection requirement or requirement of this ECP, the CAM must immediately report the occurrence to the United States. At any time during the probationary period the CAM may inspect or investigate any aspect

of the TPA's activities as they relate to the requirements of this plan or with respect to GREMEX's operations, and shall be provided full access to all records, audit personnel, vessels and shore side facilities as is necessary to perform its duties.

5.  The CAM shall provide any additional reports, in both electronic and hard copy form, to the United States and GREMEX as requested by the Court or as appropriate and to include inadequacies in the audit process, violations of the terms and conditions of the ECP and EMS and any other findings of significant problems or deficiencies.

6.  GREMEX shall cooperate fully with the CAM and the United States with respect to any review, audit and oversight functions required by applicable law and this ECP. GREMEX agrees to establish policies that make failure to cooperate with the CAM grounds for dismissal. GREMEX agrees not to retaliate against any person listed in this paragraph who cooperates with the CAM.

## G. AUDITS.

1.  During the first year of probation, the TPA shall conduct an initial round of audits of GREMEX operations (vessel and shore side) including thirty-three percent (33%) of GREMEX Covered Vessels. During the second and third years of probation, the TPA shall conduct annual of audits of thirty-three percent (33%) of the Covered Vessels. During the fourth year of probation, final audits shall be carried out as per paragraph I "FINAL EMS/ECP COMPLIANCE AUDIT" below.

2.  Audits shall be performed to ascertain and evaluate various aspects of GREMEX's Covered Vessels: their systems, equipment and components; current practices whether documented or not; and the knowledge, skills, and abilities of ship and shore side personnel as they relate to the requirements of this ECP, and other applicable maritime environmental protection requirements.

3.  Audits should take place on voyages of short duration (2-3 days) to the maximum extent practicable. GREMEX and the TPA shall coordinate the audits to accommodate, as much as practicable, the Covered Vessel's operations and schedule.

4.  The audits performed pursuant to this ECP shall exceed a typical SMS audit in scope and will be used to determine practices, procedures and equipment

conditions not typically documented during a routine inspection by the classification society, port or flag state. The results of the audits will be used to shape and revise the Environmental Management System established by this ECP.

5.  The audits shall meet the following specific requirements:

    a.  Audits shall assess all waste streams developed from any system, equipment and components found in each machinery space onboard the Covered Vessel. This will include observation and documentation describing the status and quantity of leakages apparent on each system that can contribute to bilge loading. Audits will determine the status and quantify leakages stemming from:

        i.   All pump and valve seals and glands during operation;

        ii.  All piping systems, flanges, gaskets, fittings and joints;

        iii. All equipment casings such as main and auxiliary engines, and reduction gears;

        iv.  Operation of engines, boilers, incinerators, and evaporators; and,

        v.   All other mechanical components found aboard the Covered Vessel.

    b.  Audits shall assess the adequacy and performance of the Oily Water Separator (OWS) and Incinerator, Sewage System, Oil Content Meter , and any other pollution prevention equipment to handle the quantities and types of wastes developed during normal operations. To assess the performance of the OWS, the TPA shall conduct an operational test using the oily bilge water holding and oil residue tanks or bilge well supply as would be used in normal operations. The oily bilge water holding and oil residue tanks or bilge well must not be diluted. It will include an evaluation of the capacities for all tanks or containers associated with the management of sludge, bilges and oily wastes or other wastes. It will include an evaluation of documentation tracking, maintenance and repair, and modifications of all pollution prevention equipment, and notification of equipment failure to the CM, CAM, and other shore side personnel.

c. Audits shall assess the Covered Vessel's crew's ability to handle the operational, maintenance, and repair workloads in maintaining all systems, equipment, and components onboard in order to minimize waste stream development to as low as reasonably practical.

d. Audits shall assess the adequacy of the policy, procedures, current practices and equipment, including storage capabilities used to manage shipboard solid wastes generated in all areas of the Covered Vessel and the effectiveness of garbage management plans.

e. Audits shall assess the adequacy of the policy, procedures, current practices and equipment associated with cargo management developed during all evolutions of cargo operations of the Covered Vessel.

f. Audits shall assess the ability of crewmembers to create, devise or implement an unauthorized process to dispose of a shipboard waste including regular garbage, machinery space and cargo-generated wastes.

g. Audits shall assess the adequacy of the Covered Vessel's responsible crewmembers to maintain the following records and include a complete comparative analysis (against each other where possible) of the following records:

  i. Oil Record Book;

  ii. Engine Room Alarms;

  iii. Tank sounding logs;

  iv. Personal work records and lists related to pollution prevention equipment;

  v. Maintenance records related to pollution prevention equipment;

  vi. Vendor service records related to pollution prevention equipment;

  vii. Bilge waste and sludge receipts;

  viii. Deck Log;

    ix.  Garbage Record Book;

    x.  Oil to Sea Equipment Interface Logs;

    xi.  Hazardous waste manifests;

    xii.  Solid waste discharge receipts;

    xiii.  Content Monitor (OWS) calibration logs or annual surveys by the makers;

    xiv.  Training records related to pollution prevention;

    xv.  Inspection Documents; and

    xvi.  SMS or SQE Audit documents.

h. Audits shall assess the adequacy of the policy, procedures, and current practices used to store and dispose of solvents, degreasers, cleaning wastes, batteries, paints, oily rags, fluorescent and incandescent bulbs, expired boiler and engine chemicals, used boiler and engine chemicals, galley greases, pyrotechnics, medical supplies, contaminate fuels, used oil and greases, incinerator ash, transformer oils, and contaminated refrigerants.

i. Audits shall assess and evaluate documentation containing the certifications that each Covered Vessel's officers understand the requirements of this ECP and shall require signed statements by all vessel officers attesting that they understand false entries in the Oil Record Book for machinery space and deck/cargo space operations is a violation of law.

j. Audits shall assess the policy, procedures, and current practices associated with the Master and Chief Engineer's capability to communicate with shore side personnel, including the CM and designated persons, and shall review such communications.

k. Audits shall assess the frequency and adequacy of shipboard pollution prevention and environmental protection meetings and training through interviews of crewmembers.

l.  Audits shall assess the policy, procedures, and current practices used on Covered Vessels and ashore to track crewmember environmental training, as well as the availability of and access to training resources.

m.  Audits shall assess the adequacy of existing methods for employees to report environmental concerns and evaluate the capability of a reporting individual to remain anonymous, and review processes of handling environmental complaints from crewmembers and shore side personnel.

n.  Audits shall assess the policy, procedures, and current practices to ensure that vendors, technicians, and other non-crewmembers who are boarding and/or sailing with each Covered Vessel follow GREMEX requirements regarding pollution prevention and environmental protection.

o.  Audits shall assess the policy, procedures, and current practices used to manage the existing seal tracking and valve locking program, including the storage of seals and preventing the use of duplicate seals.

p.  Audits shall assess the policy, procedures, current practices, and equipment used to maintain refrigeration units, including availability and status of refrigerant recovery units, procedures for recovering refrigerants, and maintenance of a leak log.

q.  Audits shall assess the policy, procedures, current practices, and equipment related to Oil Transfer Procedures, including slops discharges, conditions of hoses, connections and transfer equipment, and shall include reviews of Declarations of Inspections.

r.  Audits shall assess the policy, procedures, current practices, and equipment used to handle emergency releases of hazardous fluids or pollutants on deck or within machinery spaces of each Covered Vessel, including a review of the shipboard oil pollution emergency plans and evaluation of personnel performing such duties.

s.  Audits shall assess the policy, procedures, and current practices associated with ballast water management and invasive species requirements.

6.  At the conclusion of the first year, the TPA shall prepare a Report of Findings. If the TPA believes that additional time is needed to analyze available

information, or to gather additional information, or to complete the Report of Findings, GREMEX may request that the Government grant the TPA such additional time, as required, which request shall not be unreasonably denied. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Report of Findings. The Report of Findings shall be provided to GREMEX, the CAM, and the United States. Based on the Report of Findings, GREMEX shall develop and/or update the Environmental Management System (EMS) described below.

## H. ENVIRONMENTAL MANAGEMENT SYSTEM MANUAL.

1. Within nine (9) months of receiving the Report of Findings for the first round of audits from the TPA, GREMEX shall submit a proposed EMS Manual, which documents all policies and procedures established and followed by the company for purposes of ensuring that its operations fully satisfy all environmental requirements.

    a. If GREMEX believes that additional time is needed to analyze available information or to gather additional information to prepare and/or update the EMS Manual, GREMEX may request that the Government grant it such additional time as needed to prepare and submit the EMS Manual, which request shall not be unreasonably denied.

    b. If necessary, the United States may grant additional time in thirty (30) day increments for completion and/or update of the EMS Manual.

2. The TPA and the United States shall provide comments, if any, on the proposed final EMS Manual within ninety (90) days of receipt unless additional time for review is requested in writing. GREMEX shall submit a supplement to the EMS Manual or a written response, as appropriate, within ninety (90) days of receipt of the comments, if any. The EMS Manual is subject to final approval from the United States, which approval shall not be unreasonably withheld.

3. All elements of the final EMS Manual shall be fully implemented no later than nine (9) months following final approval by the United States. Upon receipt of final approval, GREMEX shall immediately commence implementation of the EMS Manual in accordance with the schedule contained in the EMS Manual.

## I. FINAL EMS/ECP COMPLIANCE AUDIT.

1. Beginning within thirty (30) days of the final year of probation, the TPA shall conduct a fourth and final audit, which shall be deemed a Final EMS/ECP Compliance Audit. This audit shall be conducted on thirty-three percent (33%) of GREMEX Covered Vessels and, in the event GREMEX is managing multiple Covered Vessels, shall be conducted on Covered Vessels that were not audited during the first three years of probation.

2. The Final EMS/ECP Compliance Audit Report shall, at a minimum, contain the following information:

   a. Audit scope, including the time period covered by the audit;

   b. The date(s) the on-site portion of the audit was conducted;

   c. The identity of the audit team members;

   d. The identity of any company representatives and regulatory personnel who observed the audit;

   e. A summary of the audit process, including any obstacles encountered;

   f. Detailed audit findings, including the basis for each finding and any areas of concern that are identified;

   g. Any audit findings or areas of concern addressed during the audit, including a description of any corrective measures and when they were implemented;

   h. Certification by the TPA that the Final EMS/ECP Compliance Audit was conducted in accordance with this document and general audit principles.

3. The TPA shall deliver each Covered Vessel's and facility's audit report to the CM upon completion. In addition, the TPA will deliver an Audit Report to the United States within sixty (60) days after the completion. If the TPA believes that additional time is needed to analyze available information or to

gather additional information, GREMEX may request that the Government grant the TPA such additional time as needed to prepare and submit the Audit Report. If necessary, the Government may grant additional time in thirty (30) day increments for completion of the Audit Report.

4. Within ninety (90) days from completion of the Final EMS/ECP Compliance Audit, GREMEX shall develop and submit to the United States, for review and comment, an Action Plan for expeditiously bringing GREMEX into full compliance with all applicable laws, regulations and the EMS/ECP, to the extent not already completed. The Action Plan shall include the result of any root-cause analysis, specific deliverables, responsibility assignments, and an implementation schedule. GREMEX may request that the United States permit a brief extension of the time limit stated above on a case-by-case basis. Such permission shall not be unreasonably withheld.

5. The Action Plan shall be reviewed by the United States which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, GREMEX shall implement the Action Plan in accordance with the schedules set forth therein. Within thirty sixty (60) days after all items in the Action Plan have been completed, GREMEX shall submit a written Action Plan Completion Confirmation to the United States.

## J. NON-COMPLIANCE.

1. This EMS/ECP does not in any way release GREMEX from complying with any applicable international conventions and treaties, state or federal statutes and/or regulations, the ISM Code, or other applicable international maritime conventions or treaties, and does not limit imposition of any sanctions, penalties, or any other actions, available under those international conventions and treaties, state or federal statutes and regulations, the ISM Code, or other international maritime safety conventions or treaties.

2. The EMS/ECP shall be part of the Plea Agreement and adherence to it will be a condition of the terms of probation. A material failure to comply with any part of this EMS/ECP may be considered as non-compliance with the terms of probation.

    a. Within ninety (90) days from any non-compliance which is identified, GREMEX shall develop and submit to the United States, for review and

comment, an Action Plan for expeditiously bringing GREMEX into full compliance. The Action Plan shall be reviewed by the United States which shall provide written comments within thirty (30) days of receipt. After making any necessary modifications to the Action Plan based on the comments, GREMEX shall implement the Action Plan in accordance with the schedules set forth therein. Within sixty (60) days of completing all items within an Action Plan, GREMEX shall submit a written Action Plan Completion Confirmation to the United States.

b. Failure of GREMEX to implement an agreed Action Plan may be a violation of the plea agreement and may be grounds for revocation or modification of GREMEX's probation.

c. Should the United States seek to revoke or modify GREMEX's probation based on GREMEX's refusal or failure to adhere to the provisions of this EMS/ECP, GREMEX shall have the right to contest such revocation before the appropriate U.S. District Court.

## K. CM/VESSEL MASTER RESPONSIBILITIES.

The Master of any Covered Vessel under this ECP shall ensure that timely reports are made to the CM of any non-complaint condition of any Covered Vessel. The CM shall ensure that timely reports are made to the United States of any non-compliant condition of any Covered Vessel. GREMEX shall establish that enforcement of and employee compliance with the EMS/ECP, ISM Code, MARPOL, and all applicable State and Federal safety and environmental statutes and regulations is an important positive factor, and that failure to comply with such policies, regulations, and laws will be a negative factor in all appropriate personnel evaluations.

## L. BOARD OF DIRECTORS.

GREMEX shall ensure that at least once each year GREMEX's GM, or equivalent, receives and reviews reports from the CM and any applicable report from the TPA and CAM concerning the implementation of this EMS/ECP. Documentation reflecting management review (such as meeting agendas or company reports) shall be included in reports to the United States.

## M. TRAINING REQUIREMENTS.

1. The CM will be responsible for developing training programs to educate and

train GREMEX personnel associated with the operation and management of its Covered Vessels. GREMEX will appoint a Fleet Training Officer, who may be the CM, to ensure that the requirements of this section are met.

2. Training shall be provided annually, or in the case of new or intermittent employees, within thirty (30) days of hire or prior to returning to a Covered Vessel on a new contract.

3. Training will be provided by a qualified instructor and address the following:

   a. The corporate environmental compliance structure outlined in this ECP and the EMS, together with any additional structure set forth in GREMEX's SMS.

   b. A comprehensive overview of this ECP, the EMS, and all applicable marine environmental protection requirements.

   c. The reporting system used to report non-compliance.

   d. Sanctions and consequences for violations such as remedial training, suspension, termination, and civil and criminal liability.

   e. Pollution prevention and minimization programs specifically relating to deck and engine department procedures and operations.

   f. All requirements set forth in the Engineering section of this ECP.

   g. Position specific training in the operation, maintenance and repair of oily water separators, incinerators, oil content discharge monitoring equipment, and other pollution prevention equipment.

   h. Procedures for solid and hazardous waste segregation and storage, disposal, and reporting of releases.

   i. All other shipboard environmental protection related procedures examined and described in the required initial review.

4. GREMEX shall maintain documentation onboard each Covered Vessel verifying that all officers and crewmembers working on the Covered Vessel have received the required training. Such documentation shall be made available to the

TPA, CAM, and the United States upon request.

5.  The Chief Engineer and Chief Officer onboard each Covered Vessel listed shall prepare independent written verification that all engine room and deck crew members have received the training required by this EMS/ECP. All engine room crewmembers shall sign and date a statement acknowledging completion of the training. This written verification, together with the signed acknowledgment, shall be completed semi-annually and maintained in the engine control room of each Covered Vessel.

## N.  ENGINEERING REQUIREMENTS.

Unless otherwise stated, all of the Engineering Requirements set forth below shall be implemented on each Covered Vessel as soon as is reasonably practicable, but in any event not later than six (6) months from the date of sentencing.

1.  Environmental Control System.

    a.  GREMEX shall implement an Environmental Control System (ECS) to help prevent the unauthorized use of connections within the engine room, machinery spaces, and cargo/deck spaces. Under the ECS, GREMEX shall require crew members to use numbered seals, locks, or welds (on flanges) to prevent the unauthorized connection to, and discharge through, piping systems that are or may be connected to the oily bilge system or and overboard discharge connections. Seals used as part of the ECS shall be non-reusable and uniquely numbered. The keys used to open locks utilized as a part of the ECS shall be controlled.

    b.  An ECS Seal Log shall be maintained by the Chief Engineer that records each time a seal is affixed or removed in the engine room and machinery spaces, including the date, time, seal number removed, seal number affixed, personnel involved, and reason for any seal removal or replacement.

    c.  Any existing seals that are found to have deteriorated or had their numbers partially or completely erased shall be replaced immediately, with the reason for replacement entered in the respective ECS Seal Log.

d. The CM will be responsible for ensuring that no duplication of ECS seal numbers occur and will maintain documentation indicating which series of environmental seals have been supplied to each Covered Vessel.

2. Tank Piping.

a. To prevent unauthorized manipulation of waste management systems within the engine room and machinery spaces, each Covered Vessel shall maintain Classification Society-approved drawings that reflect all approved modifications made to waste management systems.

b. GREMEX shall establish and maintain approval procedures for any modifications made to shipboard waste management tanks or their systems. Those procedures shall require prior CM approval for all non-emergency modifications. Any emergency modification must be reported to the TPA and CAM promptly after work is performed. Prompt approval or removal of any emergency modifications after the emergency has ended shall be required.

c. Within sixty (60) days of sentencing, the CM shall ensure that notification is given to each Covered Vessel regarding the prohibition against using unauthorized stub pipes, cross connections, or piping on waste management systems.

d. Personnel working on each Covered Vessels shall promptly notify the CM of the existence and purpose of any unauthorized stub pipes, cross connections, or piping on waste management systems in a Covered Vessel. Within thirty (30) days of receiving such information, the CM shall ensure that it is relayed to the TPA, along with any findings and corrective actions.

e. To prevent unauthorized usage of the oily bilge holding tank and oil residue tank, GREMEX shall require that ECS seals or locks be placed on all tank manhole covers, valves, or flanges that could allow for an external connection to the system. The ECS Seal Log or Lock Log shall track any time a processed bilge water tank or oily waste tank is opened.

3. Bilge-Main Cross Connections.

    a. Within sixty (60) days of sentencing, the CM shall ensure that notification is provided to all Covered Vessels regarding the prohibition against the non-emergency usage of cross connections from engine room bilge mains to the suction piping of larger pumps which may be referred to as the "fire and general service pump" or "fire, bilge and ballast" pump. The notification shall state that such usage is similar to bypassing the OWS equipment and is strictly prohibited, except in the case of an emergency.

    b. The deck plates above or near the locations of these cross connections or other interconnected systems and the valve bodies and associated hand wheels shall be painted international orange. A brightly colored sign with three-inch letters shall be permanently fixed nearby, stating – "Bilge System Piping Crossover – Emergency Use Only."

    c. To prevent unauthorized usage of those valves, GREMEX shall require that ECS seals be placed on such valves. The ECS Seal Log shall track any time a crossover to the bilge main is opened.

4. Emergency Bilge Suctions.

    a. All other bilge suction valves not connected to the bilge main, and independent emergency suctions to the vessel's engine room bilges, like those which may be connected to sea water circulating pumps, shall be painted international orange on all Covered Vessels and labeled in a manner similar to "Emergency Bilge Suction - Emergency Use Only." The valve wheels will also have a numbered and logged ECS seal capable of breakaway during emergencies, testing, and maintenance.

5. Blank Flanges.

    a. To prevent unauthorized connections within the engine room and machinery spaces of vessels, every blank flange connected to overboard piping, on systems such as saltwater service, main engine raw water cooling or other systems, shall be permanently secured, removed, or fitted with numbered ECS seals through the flange bolts that will break when such bolts are removed, to prevent unauthorized connections and discharges. The ECS seals used shall be numbered and records kept in the

ECS Seal Log. Alternative sealing methods, such as numbered foil-coated sticker seals for flanges, may also be used.

b. The blank flange securing the bilge and sludge transfer system shore connection discharge valve at the discharge stations shall also require controls as part of the ECS.

6. Additional OWS/OCM Requirements.

a. The sample line from the OWS discharge connection to the sample/flush line control valve will be painted a bright color to distinguish it from other tubing and piping in the area. The line must be routed so it is clearly visible to the extent possible for its entire length. No additional connections or tees of any kind may be added to the line.

b. Each Covered Vessel shall perform monthly operational tests of the OWS and OCM in the presence of the Chief Engineer, and one other engineer. The test shall be logged in the vessel's ORB. The Chief Engineer shall send a report to the assigned superintendent and CM.

c. Every Covered Vessel shall inspect the OWS source tanks every six (6) months and remove any accumulated oil if necessary. The OWS source tanks shall be cleaned during dry docking or sooner if necessary. Such cleaning shall be logged in the PMS.

d. Anytime an OCM is subject to maintenance or calibration, such actions shall be logged in the ORB.

e. In addition to the operational test performed in the presence of the TPA, each Covered Vessel shall conduct an annual operational test of the OWS system under actual operational conditions. This test shall include one (1) full hour of continuous processing of the contents of the Bilge Holding Tank without dilution, and without dilution of the sample line leading to the OCM, conducted by the Chief Engineer in the presence of GREMEX's shore-side representative or Class surveyor, and any other engine room personnel assigned responsibility for the operation and/or maintenance of the OWS. If an actual discharge is not feasible due to the location of the vessel or the levels of the bilge holding tanks, then the discharges shall be through a recirculation line, in accordance with the procedures approved by the vessel's Classification Society and provided further that soundings of the bilge holding tanks shall be made before and after the test and shall be made a part of the test record and providing that any alarms shall be recorded and made part of the test record. All of the above shall be recorded in the Oil Record Book (Part I). In the event that the assessment determines the OWS is not operating as designed, then an immediate report shall be made to the cognizant superintendent, CM, the Interested Parties, the TPA, and the CAM, with a copy of the engine room alarm printout to be retained.

7. Recordkeeping.

a. All sounding records required by this section shall be maintained and available to the CM and TPA for the duration of the ECP.

b. Entries made into the ORB shall be made and signed by the officer or officers in charge of the operation, reviewed and countersigned by the Chief Engineer (for ORB Part I) or Chief Officer (ORB Part II), and each completed page shall be signed by the Master.

c. A portable pump log shall be maintained documenting all instances of onboard use of a pneumatic or portable pump in the Engine Room. The log shall include a description of the fluid pumped, its source, and the tank or location where the fluid was transferred. The log shall include the date and time the pump was used and shall identify the person(s) who checked out the pump and operated it.

8. Tank Sounding Records.

    a. GREMEX shall provide each Covered Vessel with a standard format electronic tank sounding log that includes, for each sludge tank: the bilge tank associated with bilge water and/or oil residues (sludge); the tank name/designation; the tank capacity; and the sounded quantity and time and method of sounding. Soundings from each tank shall be taken at least daily. The individual taking the tank sounding shall make entries in the electronic tank sounding log and sign each entry electronically.

9. Oil-to-Sea Interfaces.

    a. GREMEX shall establish a logbook for each Covered Vessel for monitoring equipment having oil-to-sea interfaces which relies on mechanical tension, hydrostatic pressure on the seal and the surface tension between water and oil to minimize oil releases to the sea. Such interfaces may include stern tube bearings, stabilizers, controllable pitch propeller systems, maneuvering thrusters, propulsion pods, and similar equipment whereby the leakage of a sealing component may cause a loss of operating medium into the waters surrounding the vessel. Any replenishment of oil into the head tanks, operating systems reservoirs, or other receivers associated with this equipment shall be logged, regardless of the quantity involved. Ingress of water or drainage of water into or from these systems must also be logged, as far as practicable.

    b. Any extraordinary operations (such as frequent draining of interface operating systems, tanks and spaces of excessive water) shall be recorded in the official Engine Room Log, explained to the extent possible, and the records made available for inspection.

10. Fuel Oil/Lube Oil Purifier Settings and Line Breaks.

    a. GREMEX shall have a standard system for monitoring fuel oil and lube oil management on a monthly basis, including the operation of the fuel oil and lube oil purifiers. Any incident involving ships receiving proven poor quality fuel shall be noted in the Engine Room Log or similar record once it becomes known, and such entries shall refer to the relevant bunker receipts.

b. Any extraordinary operations (such as increased frequent draining of fuel oil service and settling tanks, draining engine lube oil sump tanks of excessive water) shall be recorded in the official Engine Room Log and explained to the extent possible, and the records made available for inspection.

c. All oil leaks exceeding manufacturer or historical volumes, including any fuel and/or lubricating oil leaks resulting from mechanical failure shall be reported to the CM.

## O. DOCUMENTATION AVAILABLE FOR INSPECTION.

The CM shall ensure that all documentation required by this EMS/ECP is maintained and available for inspection by the TPA and CAM and the United States. The Master of each Covered Vessel under this ECP, shall maintain on board the vessel, all records required by international conventions and treaties including SOLAS, the ISM Code, and MARPOL and applicable State and Federal statutes and regulations and any additional documents required under this EMS/ECP, such as crew training records, and will make these records available to the TPA and CAM and the United States upon request. A summary of this information and any explanation, where appropriate, shall be included in the reports to be submitted to the United States by the TPA.

## P. CHANGES TO OPERATION/MANAGEMENT.

The parties recognize that during the term of probation, the number and identity of vessels operated and/or managed, by GREMEX may increase or decrease. Any vessel, the operation or management of which is assumed by GREMEX and that will call at United States ports shall be subject to the terms and conditions of this EMS/ECP. Any vessel removed from the operation or management by GREMEX shall be excluded from the scope of the EMS/ECP. GREMEX agrees that it will immediately (but in no event later than thirty (30) days) notify the United States of any: (a) any Covered Vessel that is either acquired by or removed from GREMEX management; and (b) change in name, flag of registry, ownership or class society of any Covered Vessel. GREMEX agrees that this EMS/ECP shall remain in effect for all Covered Vessels regardless of changes in the vessels' flag of registry, recognized organizations, name, or class society. GREMEX shall notify the United States before any Covered Vessel is released from the requirements of the EMS/ECP due to a change in operation or management. GREMEX shall ensure that any Covered Vessel that it assumes

29

operational or management of during the course of probation is audited in accordance with this ECP, and that this audit takes place no later than one hundred and eighty (180) days after assuming technical management of the vessel.

## Q. SELF-ENFORCEMENT.

GREMEX agrees that it will undertake and implement all necessary procedures to ensure that the requirements of this EMS/ECP are fully satisfied.

## R. REVISIONS/MODIFICATIONS.

The requirements of this EMS/ECP, including the dates and time periods mentioned herein, shall be strictly complied with. Should GREMEX be unable to comply with any of the deadlines, GREMEX shall immediately notify the United States in writing of the reason(s) for non-compliance and propose a revised timetable. The United States shall then determine whether the revised timetable should be accepted.

## S. REPORTS

All reports, documents and correspondence required under this EMS/ ECP to be sent to the United States shall be sent to the following offices:

(a)    U.S. Department of Justice
Environmental Crimes Section
Attn: Joel La Bissonniere
150 M Street, NE, Suite 4.115, Washington, D.C. 20002
Email: Joel.Labissonniere@usdoj.gov

(b)    U.S. Attorney's Office
Northern District of Florida
Attn: Ryan Love
Assistant United States Attorney
21 East Garden Street, Suite 400
Pensacola, FL 32502-5675
Ryan.Love@usdoj.gov

30

(c)    U.S. Coast Guard Commandant (CG-INV-1)
Office of Casualty Investigations & Analysis
Attn: Designated Representative of the Coast Guard 2703 Martin Luther King
Jr. Ave, SE Stop 7501
Washington, D.C. 20593-7501
Email: hqs-smb-cg-inv-ecp@uscg.mil (less than 10GB)

(d)    U.S. Probation Department
Northern District of Florida